UNITED STATES of America et al., Plaintiffs,

v.

STATE OF MICHIGAN et al., Defendants.

No. M26–73 C.A.

United States District Court, W. D. Michigan, S. D.

Nov. 15, 1978.

James S. Brady, U. S. Atty., Terrance J. Dillon, Asst. U. S. Atty., Grand Rapids, Mich., Elmer T. Nitzschke, Dept. of Interior, St. Paul, Minn., Bruce R. Greene, Boulder, Colo., for Native American Rights Fund Bay Mills Indian Community.

James M. Janetta, Kathryn Tierney, Daniel T. Green, Sault Ste. Marie, Mich., for Bay Mills Indian Community.

Stewart H. Freeman, Asst. Atty. Gen., Lansing, Mich., Peter Steketee, Grand Rapids, Mich., for Michigan United Conservation Clubs—amicus.

## OPINION

FOX, Chief Judge.

This action involves a dispute between the United States, certain Indian tribes, and the State of Michigan concerning Indian fishing rights.

In the course of the action, the Michigan United Conservation Clubs (MUCC) petitioned the court for intervention in this case. That petition was denied, and the court's ruling was upheld on appeal. MUCC now argues that it has a constitutional right to file with the court certain petitions, circulated by its members and containing thousands of signatures, which pertain to this case. The petitions purportedly have been submitted for the purpose of presenting MUCC's views to the court. It must be noted, however, that the court is aware of MUCC's views through the brief it was permitted to file as an *amicus curiae,* or friend of the court. The clear purpose of the petitions, rather, is to influence the court's decision in this action by weight of popular opinion.

There can be no doubt that "the right of petition is one of the freedoms protected by the Bill of Rights . . .." *Eastern R. R. Conference v. Noerr Motor Freight,* 365 U.S. 127, 138, 81 S.Ct. 523, 530 5 L.Ed.2d 464 (1961). The presentation of signed petitions is a traditional means of approaching the legislative or executive branches of government. However, these branches of government may be approached in such a fashion because they are designed to be responsive to the public will: "In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends

upon the ability of the people to make their wishes known to their representatives." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972), quoting, *Eastern R. R. Conference v. Noerr Motor Freight,* 365 U.S. 127, 137, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). *See United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In other words, the executive and legislative branches of government are inherently political in nature in the sense that they function in response to, and as a result of, the judgment of the populace. Indeed, in some cases, such as the initiative and referendum process, the public has a direct role in formulating the policy of those two branches.

■ The judiciary, by contrast, is not intended to be responsive to majority rule. It is not a political creature, and the politicization of the judicial process is anathema to the principles upon which this nation was founded. The courts must maintain their independence at all costs. One need look no further than *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803), to discover that it is the duty of the courts not to respond to popular pressure, but to uphold the Constitution, even as to the actions of the other branches of government. The judicial branch of government is, by definition, concerned solely with *justice.* This aspect is a vital ingredient in the process of checks and balances upon which our federal system is based. A federal court cannot bend to the dictates of the majority of the populace, as MUCC, through its petitions, obviously desires. Numbers cannot impress this court as being equivalent to justice. The courts have always been a refuge from the tyranny of majority rule, a forum where any person may fearlessly advocate his cause, be it publicly acclaimed or abhorred, and prevail if justice so demands. For this reason, the vehicle of signed petitions is totally and irrevocably inappropriate as a means of influencing this court. The receipt of such petitions would be inconsistent with the substance or even the appearance of impartial and unbiased decision-making by this or any other court of law, and will not be tolerated.

■ Having said all that, I do not wish to imply that citizens do not also possess the right of open access to the courts. They most certainly do. It has traditionally been recognized that "[t]he right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited, supra,* 404 U.S. at 510, 92 S.Ct. at 612. *See Otter Tail Power Co. v. United States,* 410 U.S. 366, 379–80, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). However, the right of access to the court—which is but another way of phrasing the right to petition the court for redress of grievances—should not be confused with the right to present signed petitions advocating a certain result in a case to which neither the signers or their association is a party. The former is a constitutionally protected right, albeit a right circumscribed by certain rules and procedures, i. e., the Federal Rules of Civil Procedure. The latter is a blatant attempt to influence the decision of this federal court, outside of any applicable rules or procedures.

■ The only means by which any party may petition the court for redress is through compliance with the federal rules of procedure. These rules have been carefully drawn to aid the court in its determination of justice, and they must be complied with in order for this court to fulfill its constitutional role. The United States Supreme Court in *California Motor Transport, supra,* implied just such a distinction between the right to petition a court within the federal rules and the presentation of signed petitions when it stated:

We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, *use the channels and procedures of state and federal agencies and courts to advocate their causes* . . . . .

404 U.S. at 511, 92 S.Ct. at 612 (emphasis added).

■ MUCC has not been denied its right to petition this court for redress of griev-

ances. The court heard its petition for intervention. It has not been denied an opportunity to express its views on this action; MUCC has been permitted to act as *amicus curiae* to the court. Additionally, I have previously held that the State of Michigan has thus far and will continue to fully and adequately represent the interests of MUCC in this phase of the action involving the interpretation of the Treaties of 1836 and 1855. I have indicated, moreover, that MUCC may renew its motion to intervene if and when a second phase of this trial is needed.

MUCC has cited several cases in support of its contention that it has a First Amendment right to petition the court in the manner attempted here. *Eastern Railroad Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657 (1965); *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). *See also California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Far from supporting that proposition, however, those cases, considered as a group, unequivocally indicate that the right to petition the courts differs from that right as it pertains to other branches insofar as certain procedures must be followed in order to maintain the integrity of the judicial system.

I have found no cases that even remotely suggest that the courts can be subject to the type of pressure represented by the petitions in this matter. Indeed, as I have indicated above, the clear requirement of the Constitution is that they must be shielded from such blatant attempts to exert external influence on the judicial process.